THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:08-CV-289-FL

| | |
|---|---|
| SARNELL T. KELLY, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| v. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Sarnell T. Kelly ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. Claimant responded to Defendant's motion and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for DIB and SSI payments on 10 October 2003, alleging disability beginning 1 February 2002. (R. 17, 45-47, 415-23). Both claims were denied initially and upon reconsideration. (R. 35-40, 42-43, 415-16, 424-25). A hearing before the Administrative Law Judge ("ALJ") was held on 24 January 2007, at which Claimant was

represented by counsel and a vocational expert ("VE") and medical expert ("ME") appeared and testified. (R. 426-80). On 2 March 2007, the ALJ issued a decision denying Claimant's request for benefits. (R. 14-24). On 29 April 2008, the Appeals Council denied Claimant's request for review. (R. 5-7). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

In its consideration of the final agency determination, this Court must remain mindful of the standard it is to apply in reviewing the administrative decision. *See e.g., Evans* v. *Eaton Corp. Long Term Disability Plan,* 514 F.3d 315, 320-21 (4th Cir. 2008) (citations omitted) (explaining standards of review are an expression of judicial restraint safeguarding the "superior vantage points of those entrusted with primary decisional responsibility."). The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.,* is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood,* 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws,* 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make

2

credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v.*
*Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir.
1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to
whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings
and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438,
439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set
forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*,
> currently working; and (2) must have a "severe" impairment that (3) meets or
> exceeds [in severity] the "listings" of specified impairments, or is otherwise
> incapacitating to the extent that the claimant does not possess the residual
> functional capacity to (4) perform...past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's
claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v.*
*Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first
four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ
to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance
with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c).
This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree
of functional limitation resulting from a claimant's mental impairment(s): activities of daily
living; social functioning; concentration, persistence or pace; and episodes of decompensation.

3

*Id.* §§ 404.1520a(c)(3); 416.920a(c)(3). The ALJ is required to incorporate pertinent findings and conclusions based on the technique into his written decision. *Id.* §§ 404.1520a(e)(2); 416.920a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to make a severity finding as to all of Claimant's impairments; (2) failure to assess properly the severity of all medically determinable mental impairments under the special technique mandated by 20 C.F.R. §§ 404.1520a, 416.920a; (3) failure to consider whether Claimant's impairments meet or equal Listing 12.08; (4) failure to request testimony from a second medical expert as to medical equivalence; (5) failure to order an additional consultative examination; (6) improper credibility assessment; and (7) improper assessment of Claimant's residual functional capacity ("RFC"). Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 2. ("Pl.'s Mem.").

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 19). Next, the ALJ determined Claimant had the following severe impairments: (1) migraine headaches; (2) myofascial pain syndrome; (3) depression; and (4) borderline intellectual functioning. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found as follows:

4

The evidence indicates that her mental impairments cause only mild restriction of her activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace with no episodes of decompensation of extended duration.

(R. 21).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] involving only simple, routine and repetitive tasks. (R. 20). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 22). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a home health aide, fast food cook, dining room attendant, child care attendant, sales clerk and product assembler. (R. 23). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 24).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 37 years old. (R. 432, 434). Claimant attended special education classes and completed high school. (R. 434-35). Claimant attended Job Corps for nursing but was unable to complete the program as she was unable to pass the required examinations. (R. 435). Claimant was last employed as a part-time

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

personal care aide for approximately three years; however, she stated she had been discharged the week of the administrative hearing. (R. 433-34). Claimant testified to past work experience, including a seven to eight month period of employment at Best Buy as a cashier. (R. 438-39). However, Claimant was discharged from Best Buy for embezzlement. (R. 439). Claimant stated further that she was arrested for food stamp fraud and has been on probation since 1999. (R. 462).

Claimant listed her impairments in order of most severe to least severe as follows: (1) migraine headaches; (2) lower back spasms; and (3) numbness and weakness in her legs and left arm. (R. 441-45). Claimant experiences migraines on a daily basis and takes numerous medications. (R. 441-42). Claimant stated her pain medication is effective. (R. 451). Claimant's weekly lower back spasms are alleviated somewhat with the use of a machine that she straps to her back. (R. 442-43). Claimant explained any lifting can trigger a spasm. (R. 444). Claimant stated her legs go numb and give out whenever she "do[es] a lot of" standing or walking and explained "[s]ometimes, my [left] arm will do like my leg." (R. 444-45). Claimant attributed her leg problems to poor circulation. (R. 445). Claimant takes medication for leg cramping. (R. 445). Claimant experiences numerous side effects from her various medications, including hot flashes, severe stomach cramps, vomiting and lightheadedness. (R. 451). Claimant testified also to experiencing comprehension difficulties and depression. (R. 445-46, 463). Claimant stated her depression symptoms are improved when she takes her medication. (R. 464).

Claimant stated she is capable of walking one block, standing for 30 minutes and lifting 8 pounds. (R. 446-48). However, Claimant is unable to bend at the waist due to back pain and

6

explained when sitting, she must change positions or stand up "whenever the pain hits me." (R. 447-48). As for daily activities, Claimant testified that she is unable to function during the day, attributing this inability to migraine headaches and the resulting need to lie down. (R. 449). However, when asked how she managed to work as a home health aide, Claimant stated "it's something I had to do. I had no choice." (R. 449). Claimant is able to drive and attends church every other week. (R. 450). Claimant is capable of grocery shopping for approximately 10 minutes, after which she becomes dizzy and lightheaded. (R. 450). Claimant stated that she tries to clean the kitchen, make the bed and cook but relies primarily on assistance from her daughter. (R. 456-57).

## III.    Medical Expert's Testimony at the Administrative Hearing

Nathan Strahl, M.D., Ph.D., testified as a ME at the administrative hearing. (R. 306-12, 460-74). The ME explained Claimant has a history of recurrent migraine headaches coupled with myofascial pain syndrome and a history of depression. (R. 466-67). While acknowledging records indicating an IQ score between 60 and 70, the ME cited evidence noting IQ scores "in the 80 range" and described Claimant as "a reasonably bright person with an average IQ...." (R. 468). The ME acknowledged further a diagnosis contained in the record of personality disorder (also described as a "cluster B" diagnosis), which he discussed in the context of an anti-social personality. (R. 471, 473). In response to whether this disorder impacted an individual's ability to work, the ME stated, "I personally can't value an anti-social personality style as something that contributes to someone not being able to work" but acknowledged "that's a decision for the Court to make." (R. 472-73).     The ME testified that in his opinion, Claimant's medical impairments did not meet or equal a Listing. (R. 468). He supported his opinion by noting

7

Claimant's ability to work in the recent past despite her alleged impairments. (R. 468). He noted further that Claimant had in fact "self-sabotaged" some of her jobs, referencing Claimant's past legal problems. (R. 467).

## IV. Vocational Expert's Testimony at the Administrative Hearing

Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 100-05, 474-77).

After the VE's testimony regarding Claimant's past work experience (R. 476), the ALJ posed the following hypothetical:

> [A]ssume a hypothetical person of the same age, education and past work of the claimant...[who] is confined to light work, and that any work that she could accomplish would be in the realm of simple, repetitive tasks. Based on that...profile, would there be jobs...that a person could perform?

(R. 476). The VE responded the individual could perform the following representative occupations as contained in the Dictionary of Occupational Titles ("DOT") at the unskilled, light level: (1) cleaner, housekeeping - DOT # 323.687.014, 2,000 to 3,000 locally and 100,000 to 200,000 nationally; (2) cashier II - DOT # 211.462.010, 3,000 to 5,000 locally and 200,000 to 400,000 nationally; and (3) small products assembler - DOT #706.684-022, 3,000 to 5,000 locally and 200,000 to 400,000 nationally. (R. 477). The ALJ then altered the hypothetical as follows:

> [A]ssume [claimant] has all the impairments to which she has testified, and they are as severe as she has testified. She indicated that her ability to [] lift is limited to eight pounds....[H]er legs give out often...she [can] stand perhaps 20 minutes....she [is] uncomfortable with sitting...she experience[s] migraine headaches daily [and] when she [has] a headache...she takes medication [] and goes to bed. Based upon her testimony, would there be jobs, in your opinion, that a person could perform.

(R. 477). The VE responded in the negative. *Id.*

8

## DISCUSSION

### I. The ALJ's decision not to make an express determination regarding the severity of all impairments appearing in the medical record was not error.

Claimant argues that the ALJ erred in the second step of the sequential evaluation process by failing to make an express determination regarding the severity or non-severity of Claimant's "many impairments noted in the medical record," including (1) dizziness, fatigue, insomnia, with moderate-to-severe daytime somnolence, (2) paresthesias in left upper extremity/carpal tunnel syndrome (3) pelvic inflammatory disease (4) somatization disorder, chronic pain type and (5) personality disorder, NOS. *See* Pl.'s Mem. at 16.

The Court notes initially that Claimant did not list any of these conditions as impairments in either her application for benefits or her application for reconsideration thereof.[2] (R. 37, 42, 53). Moreover, Claimant did not testify to these conditions during the administrative hearing and her testimony provides no insight as to how these conditions may impact her ability to work. In fact, during the hearing, Claimant's counsel asked Claimant to identify all impairments affecting her ability to work, which elicited only the following complaints: (1) migraine headaches; (2) lower back spasms; and (3) numbness and weakness in her legs and left arm. (R. 441-45). *See Johnson v. Chater*, 969 F. Supp. 493, 509 (N.D. Ill. 1997) ("[W]hen an applicant for social security benefits is represented by counsel, the [ALJ] is entitled to assume that the applicant is making h[er] strongest case for benefits.") (quoting *Glenn v. Secretary of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987)).

---

[2] Pursuant to the Notice of Disapproved Claim and the Notice of Reconsideration by the SSA, Claimant's applications indicated she was disabled because of back problems, loss of memory, depression, headaches and stomach pain. (R. 37, 42).

9

The Court notes further the lack of evidence in the record indicating that these conditions in fact affect Claimant's ability to work and Claimant cites none. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (explaining "[t]he mere diagnosis...says nothing about the severity of the condition"). In fact, Claimant's argument is limited to a listing of the conditions and a mere assertion that "[the ALJ] made no finding with respect to many of the other impairments." Pl.'s Mem. at 16. However, the ALJ has no duty to consider an impairment absent an allegation of such impairment and record evidence of a resultant limitation or restriction. *See* S.S.R. 96-8p, 1996 WL 374184, at *3 (July 2, 1996) ("[W]hen there is no allegation of a...limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.); *see also Humphrey v. Barnhart*, 2002 WL 31129679, *3 (W.D.N.C. Aug. 28, 2002) ("The ALJ is obligated to consider only those limitations or restrictions which are alleged and/or based upon relevant evidence."). "Although the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record,...[the ALJ] is not required to function as the claimant's substitute counsel...." *Bell v. Chater*, 1995 WL 347142, at *4 (4th Cir. Jun. 9, 1995) (unpublished table decision) (citing *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994)) (internal citations and quotations omitted). Ultimately, Claimant carries the burden of establishing a prima facie entitlement to benefits and bears the risk of nonpersuasion. *Id.* (internal citations and quotations omitted); *see also* 20 C.F.R. § 404.1512(c) ("[Claimant] must provide evidence...showing how the impairment(s) affects...functioning...."). Accordingly, having failed to carry her burden, Claimant's argument as to this issue is without merit.

**II.    The ALJ properly assessed the severity of Claimant's medically-determinable impairments under the special technique for mental impairments in accordance with 20 C.F.R. §§ 404.1520a, 416.920a.**

Claimant contends the ALJ improperly assessed the severity of all medically-determinable mental impairments under the special technique set forth in 20 C.F.R. §§ 404.1520a, 416.920a. *See* Pl.'s Mem. at 18-20. Specifically, Claimant avers that the ALJ "incorporated [only] the conclusions regarding the "B" criteria of the [] Listings, without discussion" in violation of 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2). *Id.* at 18. This Court disagrees.

In cases where a claimant presents evidence that she suffers from mental impairments, regulations prescribe a "special technique" that the ALJ must follow. *See* 20 C.F.R. §§ 404.1520a(b)-(c); 416.920a(b)-(c); *see also Newton v. Astrue*, 559 F. Supp. 2d 662, 667 (E.D.N.C. 2008). In particular, upon determining that a claimant has medically determinable mental impairments, the ALJ must rate the degree of a claimant's functional limitation resulting from said impairments in four broad areas (also known as the "B criteria" of Listings): (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C). The first three functional areas are rated on a five-point scale: none, mild, moderate, marked and extreme. *Id.* §§ 404.1520a(c)(4); 416.920a(c)(4). A four-point scale is used to rate the fourth functional area: none, one or two, three, and four or more. *Id.* The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. *Id.* The ALJ's decision must document application of the special technique and in particular, "show the significant history, including examination and

11

laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2).

The ALJ correctly evaluated Claimant's mental status and followed the specific guidelines required. As conceded by Claimant, the ALJ listed the four criteria necessary to evaluate a mental impairment pursuant to 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). (R. 21); *see* Pl.'s Mem. at 18. In particular, the ALJ explained "[t]he evidence indicates that [Claimant's] mental impairments cause only mild restriction of her activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace with no episodes of decompensation of extended duration." (R. 21).

Also, despite Claimant's contention to the contrary, the ALJ provided "significant history," including detailed medical findings, in his decision pursuant to 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2). In particular, the ALJ's decision provides a summary of findings and observations by psychiatrist Nadeem Akhtar, M.D., and state agency consultants Janet Cardasssi, M.A., Meredith Hall, Ph.D., and Scott Schell, M.D. (R. 20-21, 246-48, 265-67, 300-02, 367-70). These findings describe Claimant as follows: (1) lack of crying spells, psychotic symptoms, suicidal thoughts, hallucinations or delusions; (2) self-reports of insomnia, psychomotor retardation, fatigue, difficulty concentrating, loss of interests and feelings of worthlessness and helplessness; (3) fully oriented with clear thought processes, apparent good judgment and fairly intact memory; (4) limited cognitive abili ties and some impairment in personal and social adjustments; and (5) an ability to follow 2-step instructions and perform

12

simple, routine, repetitive tasks.[3] (R. 20-21). The ALJ noted further Claimant's (1) IQ scores of 80 in May 2000, 69 in January 2004 and Dr. Schell's estimate of "around 80" during his January 2005 evaluation of Claimant (R. 266, 301, 367); and (2) Global Assessment of Functioning ("GAF") scores of 54 in September 2003, 64 in 2004 and 60 as of January 2005.[4] (R. 248, 302). The ALJ acknowledged Claimant's hospitalization in January 1989 following a suicide attempt by prescription drug overdose, which was determined to be Claimant's reaction to an unwanted pregnancy. (R. 20). Finally, the ALJ noted Claimant's description of her daily activities undermined her alleged disabling limitations. (R. 23).

Claimant contends further that the ALJ's analysis of Claimant's mental impairment is similar to the analysis by the ALJ deemed to be lacking in the case of *Wilson v. Astrue*, 2008 WL

---

[3] Claimant contends that the ALJ either "ignored" much of the evidence provided by Ms. Cardassi and Drs. Akhtar, Hall and Schell or omitted said evidence from his analysis when applying the criteria for mental impairments. *See* Pl.'s Mem. at 20. To the contrary, the ALJ acknowledged much of the evidence cited by Claimant, as detailed above. Moreover, the ALJ is not required to discuss all evidence in the record. *See, e.g., Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (ALJ need not discuss every piece of evidence in making credibility determination); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) (noting "a written evaluation of every piece of testimony and submitted evidence is not required"). Rather, the ALJ must "provide [this Court] with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *see also Coffman*, 829 F.2d at 517. Here, the ALJ's summary of the medical findings by Dr. Akhtar and the state agency consultants, as discussed above, "enable[s]...[this Court] to conclude that [the ALJ] considered her medical condition as a whole." *See Dyer*, 395 F.3d at 1211.

[4] The GAF scale ranges from zero to one-hundred and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 1994). A GAF score of 51 to 60 indicates "[m]oderate symptoms...[or] moderate difficulty in social, occupational, or school functioning." DSM-IV at 32 (bold typeface omitted). A GAF score of 64 reflects "[s]ome mild symptoms...[or] some difficulty in social, occupational, or school functioning...but generally functioning pretty well...." *Id.*

13

2019650 (E.D.N.C. May 9, 2008), and accordingly this case should be remanded on similar grounds. *See* Pl.'s Mem. at 20. The Court, however, finds *Wilson* materially distinguishable from the present case. In *Wilson*, the ALJ's decision did not reference the "special technique" or any of the four functional areas. *Wilson*, 2008 2019650, at *9. However, as conceded by Claimant, in this case, the ALJ made findings as to the degree of limitation in the four functional areas. *See* Pl's Mem. at 18; (R. 21). Moreover, in *Wilson*, despite having provide a detailed summary of Claimant's mental health records, the ALJ characterization's of Claimant's depression as "mild reactive depression" arguably contradicted the numerous findings of "major depressive disorder" by Claimant's physicians. *Id.* at *8. Accordingly, in *Wilson*, this court concluded that "the ALJ has simply identified evidence found to be noteworthy without indicating how he considered this evidence." *Id.* at *8. In this case, there are no contradictory characterizations of Claimant's depression and upon summarizing the noteworthy evidence, the ALJ explained

> [t]he record suggests that the claimant's depressive episodes have been situational in nature prompted first by an unwanted pregnancy and later by marital problems. Despite this condition, the evidence shows she has normal thought processes and intact memory with no psychosis, and the last mental health report in 2005 indicated that her symptoms had been mild in the past year.

(R. 21). For the foregoing reasons, Claimant's argument on this issue is without merit.

14

**III.    The ALJ properly considered whether Claimant's impairments individually or in combination meet or equal a Listing.**

Claimant argues that the ALJ failed to consider whether her impairments are severe enough to meet or equal the requirements of Listing 12.08 (Personality Disorders).[5] *See* Pl.'s Mem. at 11-13.

To be disabled under the Listings, the claimant may present evidence either that the impairment meets or is "medically equivalent" to a listed impairment. *See Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986); *see also* 20 C.F.R. §§ 404.1526, 416.926. An impairment meets a Listing if it satisfies all the specified medical criteria. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (explaining "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify"). Even if an impairment does not meet the criteria of a Listing, it can medically equal the criteria of a Listing. 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5). To establish medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. §§ 404.1526(a), 416.926(a) (medical findings must be at least equal in severity and duration to the listed criteria).

Listing 12.08 addresses personality disorders and reads, in pertinent part, as follows:

> A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress. Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness. The required level of severity for these disorders is met when the requirements in both A and B are satisfied.
>
> A.    Deeply ingrained, maladaptive patterns of behavior associated with one of the following:

---

[5]  In making his step-three finding, the ALJ concluded the medical evidence did not support a finding that Claimant's impairments met or equaled the criteria of Listings 11.00, 12.04, 12.05 and 12.07. (R. 20).

15

> 1. Seclusiveness of autistic thinking; or
> 2. Pathologically inappropriate suspiciousness or hostility; or
> 3. Oddities of thought, perception, speech and behavior; or
> 4. Persistent disturbances of mood or affect; or
> 5. Pathological dependence, passivity, or aggressivity; or
> 6. Intense and unstable interpersonal relationships and impulsive and damaging behavior;
>
> AND
>
> B. Resulting in two of the following:
>    1. Marked restriction of activities of daily living; or
>    2. Marked difficulties in maintaining social functioning; or
>    3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
>    4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. pt. 404, Subpt. P, App. 1 § 12.08.

The DSM-IV lists ten personality disorders and contains the category "personality disorder, not otherwise specified" for behavioral patterns that do not match the ten disorders, but nevertheless exhibit characteristics of a personality disorder. DSM-IV at 629. The personality disorders are grouped into three clusters (A, B and C). *Id.* Cluster B personality disorders are evidenced by dramatic, emotional and erratic behaviors. *Id.* at 630. Relying on Dr. Schell's diagnosis of "personality disorder, not otherwise specified" and Dr. Strahl's acknowledgment that Claimant "has a cluster B diagnosis" and the definition thereof (R. 473), Claimant contends "these findings would seem to satisfy the part 'A' requirements that a person be characterized by 'intense and unstable interpersonal relationships and impulsive and damaging behavior.'" Pl.'s Mem. at 14 n.8; (R. 302, 473). Claimant indicates also a history of physical abuse by her

16

husband and "her tendency to put herself in positions where she can be victimized by others," citing her 1999 arrest for embezzlement.[6] *See* Pl.'s Mem. at 12.

However, assuming the above evidence satisfies the "A" requirements, there is insufficient evidence that Claimant meets the "B" requirements of Listing 12.08 so as to have merited consideration of this Listing by the ALJ. Claimant contends her maladaptive behavior results in "'marked' limitation in concentration, persistence and pace" and "'marked' impairment in social functioning and judgment" and in support of her contention, cites Dr. Hall's findings that Claimant (1) "should have difficulty in focusing her attention over an eight-hour day due to her depression and anxiety and (2) "has lived with a sense of victimization." *See* Pl.'s Mem. at 12; (R. 369). However, as discussed above, the ALJ found Claimant's mental impairments caused only "moderate difficulties" in maintaining concentration, persistence or pace and "mild difficulties" in maintaining social functioning - findings which are supported by substantial evidence. (R. 21). The Court notes further that Claimant has cited no evidence that any mental health professional diagnosed her with a personality disorder that would constitute an impairment under Listing 12.08. *See Young v. Barnhart*, 284 F. Supp. 2d 343, 353 (W.D.N.C. 2003) (explaining "while the mental health records evidence what might be considered a personality disorder, the ALJ's decision that Plaintiff did not have a mental impairment sufficient to meet Listing 12.08 was supported by substantial evidence").

The ALJ is only required to explicitly identify and discuss the relevant listing of impairments if there is "ample evidence in the record" to support the determination that the impairment meets or is medically equivalent to one of the listed impairments. *Ketcher v. Apfel*,

---

[6] As a cashier for BestBuy, Claimant allowed friends to exit the store without paying for merchandise totaling $20,000.00. (R. 265).

68 F. Supp. 2d 629, 645 (D. Md. 1999). The Court finds that there was not ample evidence presented by Claimant to require that the ALJ review Listing 12.08 in determining the severity of Claimant's mental impairments. Accordingly, the Court finds no merit in Claimant's contention that the ALJ erred by failing to find her disabled under Listing 12.08 or by failing to provide a discussion of this listing in his written decision.

## IV. The ALJ's decision not to request testimony from a second medical expert as to medical equivalence was not error.

Claimant faults the ALJ further for failing to recognize in his decision the ME's testimony that "he did not consider personality disorders pursuant to Listing 12.08 as a proper basis for disability, contrary to the Commissioner's policies."[7] Pl.'s Reply at 4. Claimant contends her case should be remanded so that a medical expert "familiar with and willing to apply, the criteria at (sic) Listing 12.08" may testify. *See* Pl.'s Mem. at 12.

The ALJ's decision does not reference the ME's testimony; however, this failure is not fatal to the administrative conclusion given the evidence of record. The regulations discussing medical equivalence require the ALJ to consider the opinion of one or more medical or psychological consultants designated by the Commissioner when determining whether an impairment medically equals a Listing. *See* 20 C.F.R. § 404.1526(c); *see also* S.S.R. 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("Longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the [ALJ] or the Appeals Council must be received into the record as expert

---

[7] In response to whether a personality disorder impacted an individual's ability to work, the ME stated, "I personally can't value an anti-social personality style as something that contributes to someone not being able to work" but acknowledged "that's a decision for the Court to make." (R. 472-73).

opinion evidence and given appropriate weight."). The ALJ, however, need not summon a medical expert to testify at the hearing if the record contains documents completed by state agency consultants addressing whether the alleged impairment equals a Listing, such as a Disability Determination and Transmittal form or a Psychiatric Review Technique ("PRTF") form - both of which appear in the record. *See* S.S.R. 96-6p, 1996 WL 374180, at *3; (R. 35-36, 274-87). Brett Fox, M.D., the state agency medical expert who completed both, found Claimant's impairments were not medically equivalent to a Listing.[8] (R. 274-87). Furthermore, as discussed above, the ALJ's decision repeatedly references reports by psychiatrist Dr. Akhtar, and state agency examining consultants Ms. Cardasssi, Dr. Hall and Dr. Schell to support his findings. (R. 20-21). As the ALJ was not obligated to seek expert medical testimony before concluding that Claimant's impairment was not medically equivalent to a Listing, he therefore was not required to seek the opinion of an additional medical expert on whether Claimant met or equaled a listed impairment. (R. 35-36, 274-87).

## V.    The ALJ's decision to not order an additional consultive examination was not error.

Claimant contends another psychological consultative examination "should be ordered, with instructions to review the entire record, including the extant claim file with school records, in order to determine [her] appropriate level of intellectual functioning for purposes of" her disability claim. Pl.'s Mem. at 16. Claimant's argument is based on the conflicting full IQ findings by state agency consultants Dr. Hall and Ms. Cardassi. *See id.* at 15-16; (R. 265, 367). This Court disagrees.

---

[8] The Court notes that in determining Claimant was capable of performing simple, routine tasks, Dr. Fox relied on medical records from Dr. Akhtar and Ms. Cardassi - records also relied upon by the ALJ. (R. 291).

19

Ordering a consultive examination is within the discretion of the ALJ. *See Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007); *see also Sims v. Apfel*, 224 F.3d 380, 381 (5th Cir. 2000); *see generally* 20 C.F.R. §§ 404.1519, 416.919. "The decision to purchase a consultative examination...will be made after [the ALJ] [has] given full consideration to whether the additional information needed (e.g., clinical findings, laboratory tests, diagnosis, and prognosis) is readily available from the records of [a claimant's] medical sources." 20 C.F.R. §§ 404.1519a(a), 416.919a(a). However, "a consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [a claimant's] claim." *Id.* at §§ 404.1519a(b), 416.919a(b). For example, a consultative examination is normally required, *inter alia*, where "[a] conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved" or "[t]here is an indication of a change in [a claimant's] condition that is likely to affect [her] ability to work." 20 C.F.R. §§ 404.1519a(2)(b)(2), (4), 416.919a(2)(b)(2), (4).

In considering Claimant's mental abilities, the ALJ relied in part on the psychological consultative examinations performed by Ms. Cardassi and Drs. Hall and Schell, with Dr. Schell's January 2005 evaluation serving as the most recent. (R. 265-267, 268-70, 300-02, 367-70). Claimant does not cite any evidence indicating a change in her condition subsequent to these examinations and Claimant has presented no additional evidence to be considered by this Court. With respect to conflicting evidence, the ALJ noted that "[a]lthough the claimant's full-scale IQ score was measured as only 69 in January 2004 [by Ms. Cardassi], it was previously measured as 80 [by Dr. Hall] and Dr. Schell also estimated it was around 80 in 2005." (R. 21, 266, 301, 367). While both Ms. Cardassi and Dr. Schell acknowledged Claimant's enrollment in special

education classes during her high school experience, as noted by the ALJ, both "concluded that the claimant could follow simple instructions and perform routine, repetitive tasks." (R. 21, 265, 267, 302). Despite the conflicting IQ scores, both Ms. Cardassi and Dr. Schell concluded that Claimant is capable of performing unskilled work. *See* S.S.R. 96-9p, 1996 WL 374185, at \*9 (July 2, 1996) (listing the following as "generally required by...unskilled work: [u]nderstanding, remembering and carrying out simple instructions" and "[d]ealing with changes in a routine work setting"). Indeed, as the ALJ noted, Claimant's past relevant work includes both unskilled and skilled positions. (R. 23). Accordingly, an additional consultative examination is unwarranted as the record was sufficiently developed for the ALJ to make an informed decision. *See Bracey v. Astrue*, 2009 WL 86572, at \*4 (E.D.N.C. Jan. 6, 2009) (stating "ALJ was under no obligation...to obtain an additional consultative examination where, as here, the evidence as a whole was sufficient to support a decision"); *see also Kilcrease v. Barnhart*, 347 F. Supp. 2d 1157, 1162 (D. Ala. 2004) (explaining an additional consultative examination was unwarranted as the ALJ had adequate information to assess the claimant's residual functional capacity properly).

## VI. The ALJ properly evaluated the credibility of Claimant's statements.

Claimant contends the ALJ failed to adequately evaluate the credibility of Claimant's testimony. *See* Pl.'s Mem. at 10.

Upon establishing the existence of a medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptom(s), the ALJ must evaluate the intensity, persistence and limiting effects of said symptom(s) on a claimant's ability to perform basic work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); S.S.R. 96-7p, 1996

21

WL 374186, at *1; *see Craig*, 76 F.3d at 595. This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus, the ALJ must consider conflicts between the claimant's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); S.S.R. 96-7p, 1996 WL 374186, at *4. A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). In assessing credibility, the ALJ must consider the entire case record, provide specific reasons for the credibility finding and ensure the weight accorded (and reasoning for said weight) to the claimant's statements is evident to the claimant and any subsequent reviewers. S.S.R. 96-7p, 1996 WL 374186, at *4; *see Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985); *Newton*, 559 F. Supp. 2d at 673. In addition to the objective medical evidence, the ALJ's evaluation of a claimant's credibility must include the following factors:

(1)     effect of symptoms on claimant's daily activities
(2)     location, duration, frequency and intensity of the symptom(s)
(3)     factors that precipitate or aggravate claimant's symptoms
(4)     type, dosage, effectiveness and side effects of medication taken to
        alleviate the symptom(s)
(5)     non-medical treatment received for relief of the symptom(s)
(6)     any non-treatment measures used to relieve the symptom(s)
(7)     other factors concerning functional limitations and restrictions due to the
        symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3; *see Hyatt v. Heckler*, 711 F. Supp. 837, 848 (W.D.N.C. 1989), *aff'd in part, amended in part, vacated in part*, 899 F.2d 329 (4th Cir. 1990).

After reviewing the ALJ's decision, this Court finds the ALJ made the necessary findings in support of his credibility determination pursuant to the framework explained above. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). With respect to medical evidence, the ALJ acknowledged Claimant's medical visits for complaints of headaches and musculoskeletal pain, in addition to summarizing medical records as to Claimant's mental impairments. (R. 20-21). In particular, the ALJ acknowledged Claimant's history of headaches since 1993 as well as her numerous neurological examinations. (R. 20). He noted also that both Claimant's neurologist, M. Khasru, M.D., and the state agency examining consultant, Daniel Uba, M.D., attributed Claimant's musculoskeletal symptoms to myofascial pain syndrome. (R. 20, 346-49).

In addition to the objective medical evidence, the ALJ also considered the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) as referenced above. *See* S.S.R. 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the [ALJ] must consider in assessing an individual's credibility and must be considered in the context of all the evidence."). In particular, the ALJ's decision cites the following evidence in evaluating Claimant's credibility: (1) Claimant's testimony as to daily activities, which includes driving to church, the grocery store and medical appointments; (2) Claimant's back, neck and arm pain, a history of headaches, reports of insomnia, fatigue, concentration difficulties, loss of interests and feelings of worthlessness; (3) indications that Claimant's depression has been situational in nature; (4) lack of medical care for extended periods and Claimant's failure to

23

follow through with recommended therapies;[9] and (5) Claimant's work experience, including the fact Claimant was discharged from employment the week of her administrative hearing and Claimant's firing from her former cashier position based on embezzlement charges. (R. 20-23)

Claimant faults the ALJ for noting Claimant's medication noncompliance and the several medical appointments that she missed. *See* Pl.'s Mem. at 10. "Persistent attempts by the individual to obtain relief of...symptoms, such as by increasing medications...generally lend support to an individual's allegations of intense and persistence symptoms." S.S.R. 96-7p, 1996 WL 374186, at *7. In contrast, however,

> [An] individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints.... However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without *first considering any explanations that the individual may provide*, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

*Id.* (emphasis added). Here, Claimant has provided no reason for missing several appointments and medication non-compliance. Indeed, Claimant's counsel suggests only that "[i]t could be []
[Claimant] ran out of pain medication because she was taking more than perhaps was authorized,

---

[9] In October 2004, Dr. Khasru noted that Claimant had returned for a follow-up after a long absence and had not taken her medications for the previous three months. (R. 271). However, the ALJ mistakenly attributed this statement to a non-existent January 2004 progress note. (R. 22, 271). Claimant avers "[t]his error might be harmless but for the fact that Dr. Khasru noted that, even when she was taking the medications, she did not see any change in her pain, and was therefore nonresponsive to the regimen she was placed on." *See* Pl.'s Mem. at 6. However, while ignored by Claimant, Dr. Khasru noted further in his October 2004 progress note that Claimant "did not see the psychiatrist or pain psychologist [referred by Dr. Khasru in March 2004] either." (R. 271, 273). Accordingly, in summarizing the misidentified October 2004 progress note, the ALJ noted correctly that Dr. Khasru had not seen Claimant in seven months and had not seen a psychiatrist or psychologist during that time. (R. 22).

something that patients with a desperate need to reduce their pain level often do, which would tend to enhance the credibility of her pain complaints." Pl.'s Mem. at 11.

It is within the ALJ's province to determine credibility and, in fulfilling that function, the ALJ is entitled to consider inconsistencies between a claimant's testimony and the evidence of record. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). To the extent that the ALJ detailed the relevant facts underlying his finding that Claimant's testimony was not fully credible, his credibility finding is entitled to substantial deference. *See Shively*, 739 F.2d at 989. Here, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. While Claimant may disagree with the manner in which the ALJ took account of this evidence, this Court cannot re-weigh the evidence. *See Mastro*, 270 F.3d at 176. For the foregoing reasons, Claimant's argument as to this issue is without merit.

## VII. The ALJ properly assessed Claimant's RFC.

Claimant contends that the ALJ erred in evaluating her RFC, in part, by not performing a function-by-function analysis of her abilities and by failing to consider her impairments in combination. *See* Pl.'s Mem. at 5, 16-17.

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. S.S.R. 96-8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining the RFC, the ALJ considers an individual's

25

ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4). It is based upon all relevant evidence and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Finally, the RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

Claimant's argument regarding the ALJ's alleged failure to consider the cumulative effects of her impairments merits little discussion, as "[s]ufficient consideration of the combined effects of a [claimant's] impairments is shown when *each is separately discussed in the ALJ's decision*, including discussion of a [claimant's] complaints of pain and level of daily activities." *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (emphasis added) (citations omitted), *aff'd* 179 Fed. Appx. 167 (4th Cir. 2006) (unpublished per curiam). Here, the ALJ acknowledged Claimant's complaints of headaches,[10] chest, back, neck and arm pain and numerous depression-related symptoms. (R. 20-21, 247, 266, 269, 273, 305, 346-49).

---

[10] Claimant avers that the ALJ summarized incorrectly the October 2004 MRI scan of Claimant's brain. *See* Pl.'s Mem. at 6. After noting that the MRI "showed no abnormality except for some non-specific white matter changes of punctuate (sic) lesions that could be seen in a person with occasional migraines," the ALJ concluded that "despite [Claimant's] history of headaches, she has no significant brain or neurological abnormalities on examination." (R. 20-21, 271). Claimant contends that "[e]ither the MRI displays abnormalities, or it does not. One or the other of these findings is incorrect." Pl.'s Mem. at 6. Claimant's argument has no merit. In reviewing the MRI, Dr. Khasru stated as follows: "MRI of the brain which showed nonspecific white matter changes of punctate lesions which could be seen in a patient with migraine (sic) occasionally, otherwise no abnormalities seen." (R. 271). The ALJ summarized accurately Dr. Khasru's finding and in fact, based in part on said finding, classified Claimant's migraine headaches as a severe impairment. (R. 20). However, Dr. Khasru's statement that no other abnormalities were present supports the ALJ's conclusion that Claimant had no significant brain or neurological abnormalities on examination.

Nonetheless, Claimant faults the ALJ fo r failing to consider the impact of all assessments appearing in Claimant's medical record (and discussed in the step-two argument above) on Claimant's RFC. *See* Pl.'s Mem. at 16. However, as discussed in detail above, Claimant cites no authority for the implied proposition that the mere existence of non-severe impairments necessarily inhibits her ability to function. Indeed, the ALJ has no duty to consider an impairment absent allegation of such impairment and record evidence of a resultant limitation or restriction. *See* S.S.R. 96-8p, 1996 WL 374184, at *3.

Social Security Ruling 96-8p states the "RFC assessment must...assess [the individual's] work-related abilities on a function-by-function basis." S.S.R. 96-8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. §§ 404.1545 (b)-(d), 416.945 (b)-(d). The functions considered, where applicable, include physical,[11] mental[12] and any other[13] abilities affected by an individual's impairment. *See* 20 C.F.R. §§ 404.1545 (b)-(d), 416.945 (b)-(d). In this case, with respect to physical abilities impacted, the ALJ summarized findings by Drs. Khasru and Uba and noted that Claimant's "physical examinations have been mostly unremarkable with negative straight leg-raising tests, normal muscle strength throughout, normal gain and station and no significant motor, sensory or reflex deficits." (R. 20-21, 273, 269). As for mental abilities, the ALJ

---

[11] Physical abilities include "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)...." 20 C.F.R. §§ 404.1545(b), 416.945(b).

[12] Mental abilities include "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting...." 20 C.F.R. §§ 404.1545(c), 416.945(c).

[13] In defining "other abilities," the regulations provide "[s]ome medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities." 20 C.F.R. §§ 404.1545(d), 416.945(d).

discussed in detail findings by Ms. Cardassi, Dr. Khasru and Dr. Schell, as noted above. Based on the medical evidence, the ALJ concluded that Claimant is "limited by her mental impairments to performing only simple, routine, repetitive-type tasks." (R. 21). Finally, Claimant did not allege any other abilities affected by her impairments and the evidence does not support any such limitations. *See* 20 C.F.R. §§ 404.1512(c), 416.912(c) ("[Claimant] must provide evidence...showing how the impairment(s) affects...functioning....").

Based on the foregoing, this Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 5th day of March, 2009.

Robert B. Jones, Jr.
United States Magistrate Judge

28